HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALASKA PROTEIN RECOVERY, LLC, et al.,

                  Plaintiffs,

      v.

PURETEK CORPORATION,

                 Defendant.

CASE NO. C13-1429

ORDER

## I.  INTRODUCTION

This matter comes before the court on three motions.  Defendant Puretek Corporation has moved to compel arbitration of this entire dispute.  Plaintiffs Alaska Protein Recovery, LLC ("APR"), and Trident Seafoods Corporation ("Trident") have moved to dismiss Puretek's counterclaims for failure to state a claim.  Plaintiffs have also asked for leave to amend their complaint to add Barry Pressman as a Defendant.  For the reasons stated herein, the court GRANTS Puretek's motion to compel arbitration (Dkt. # 11) and STAYS this action pending arbitration.  The court DENIES Plaintiffs' motion to amend.  Dkt. # 14.  Because this dispute will be resolved in arbitration, the court need not decide Plaintiffs' motion to dismiss Puretek's counterclaims, and the clerk shall TERMINATE that motion.  Dkt. # 16.

ORDER – 1

## II.  BACKGROUND

APR extracts oil from salmon and purifies it; Puretek manufactures, bottles, and markets over-the-counter nutritional supplements.  In January 2009, they entered a "Supply Agreement" that provided, in essence, that APR would supply salmon oil, Puretek would package it in bottled capsules and sell it to large retailers like Costco, and the parties would share profits and costs.  The Supply Agreement had a 20-year term, although it permitted either party to terminate the Agreement for cause.  Among the Agreement's acknowledged causes for termination was a party's inability to pay its debts.

According to APR, by April 2011 Puretek had fallen almost $600,000 behind in Supply Agreement payments.  On April 5, 2011, APR gave Puretek a notice of default citing both the $600,000 debt and unspecified "misrepresentations surrounding its non-payment" of the debt.  Amend. Compl. ¶ 11.

That the parties entered the Supply Agreement and APR gave an April 2011 notice of default is about the only aspect of this dispute that they can agree on.  Indeed, APR apparently disagrees even with itself about what happened after it gave its notice of default.  The court will consider those disagreements later.  The court begins its attempt to unravel the events leading to this lawsuit by recounting the facts as APR alleges them in its complaint.

On the same April 2011 day that it issued its notice of default, APR claims that Puretek and it entered into a written "Interim Agreement."  Amended Compl. ¶ 12.  The Interim Agreement, which is not part of the record before the court, allegedly acknowledged Puretek's debt to APR and permitted Puretek to reinstate the Supply Agreement if it paid the debt within 60 days.  *Id.*  The court can only guess as to why the parties entered the Interim Agreement, as the Supply Agreement itself permitted Puretek to cure its default within 60 days.

According to APR, it and Puretek entered yet another written agreement on May 27, 2011, the "Interim Agreement Amendment No. 1."  Amended Compl. ¶ 13.  The

ORDER – 2

Interim Agreement Amendment No. 1 is also not a part of the record before the court. APR says that it includes Puretek's acknowledgement that the Supply Agreement had terminated for cause (even though fewer than 60 days had passed from APR's notice of default) as well as Puretek's acknowledgment that it had abandoned virtually all rights accruing to it under the Supply Agreement.  *Id.*  The Interim Agreement Amendment No. 1 apparently established a new relationship between the parties, one that was terminable for breach on three days' notice or for any reason at all on ten day's notice.  *Id.*

APR also asserts that it "reconfirmed" that the Supply Agreement had terminated on June 10, 2011, because Puretek had yet to pay its debt.  Amended Compl. ¶ 14.

For reasons no one explains, APR terminated Interim Agreement Amendment No. 1 in August 2013.  Amended Compl. ¶ 16.  By that time, APR had been acquired by Trident.  *Id.* ¶ 15 ("Trident acquired a 100 percent ownership interest in APR as of January 2012.").  APR and Trident assert that Trident acquired "all rights under contracts involving APR," and that "[a]ll of APR's business activity [since Trident's January 2012 acquisition] has been conducted under Trident's name."  *Id.* ¶ 3.  APR also asserts, however, that it continues to operate as a standalone entity even though it is wholly owned by Trident.  Lane Decl. (Dkt. # 7) ¶ 2.

Puretek allegedly responded to the August 2013 termination of the Interim Agreement Amendment No. 1 by "asserting to some or all purchasers of the fish oil capsules, that Trident/APR had wrongly terminated the contract and/or violated the terms of the APR/[Puretek] Agreement(s), and that PTC possesses and/or has an ownership interest, or joint ownership interest, in certain intellectual and physical property."  Amended Compl. ¶ 17.  According to APR, Puretek made these representations in an effort to induce customers to stop doing business with APR.  *Id.*  The court has no idea what "intellectual property" Puretek has allegedly claimed an interest in.  The Supply Agreement designates APR's "Pure Alaska Omega" brand as licensed intellectual property, but is otherwise wholly generic as to the parties' intellectual property.  As to

ORDER – 3

physical property, APR alleges that Puretek still has more than 10 million salmon oil capsules in its possession, and that it has refused APR's requests to account for it.

APR and Trident filed this suit asking only for declaratory judgment. They ask the court to declare which of the contracts between the parties have been properly terminated, what their continuing legal obligations arising from those contracts are, who owns the unspecified intellectual property, and what should become of the inventory in Puretek's possession. Plaintiffs do not explain why Trident is a party to this suit. There is no allegation that Trident itself has entered any contract with Plaintiff, or that the declarations Plaintiffs request would impact Trident (as opposed to Trident's wholly-owned subsidiary, APR). Plaintiffs also ask for a declaration as to "[w]hether, and if so, to what extent, the dispute between Trident/APR and [Puretek] is subject to arbitration." Amended Compl. ¶ V(1)(a).

Arbitration is also the subject of what Puretek has denominated a counterclaim, which requests that the court order arbitration of this dispute. The Supply Agreement has a clause requiring arbitration of "[a]ny dispute, claim or controversy arising out of or relating to this Agreement . . . ." According to APR, the Interim Agreement and the Interim Agreement Amendment No. 1 also contain arbitration clauses, although the court can only guess at the terms of those clauses. Amend. Compl. ¶ 22. Puretek does not explicitly admit that the subsequent agreements contain arbitration clauses, but it insists that this dispute is arbitrable in its entirety. Answer ¶ 22.

In addition to requesting arbitration, Puretek asserts an omnibus counterclaim for "Breach of Contract & Legal Duties," as well as a counterclaim invoking the Washington Consumer Protection Act. Puretek notes, however, that its counterclaims are merely "three general categories of counterclaims that Puretek will pursue in this case if its pending Motion to Compel Arbitration . . . is not granted." Answer at p. 6-7.

Now before the court are Puretek's motion to compel arbitration, APR's and Trident's motion to dismiss Puretek's counterclaims, and APR's and Trident's motion to

ORDER – 4

amend their complaint.  Plaintiffs want to add Puretek President Barry Pressman as a Defendant, solely because Mr. Pressman personally guaranteed Puretek's debts.  The court can only guess as to which debts Mr. Pressman allegedly guaranteed, because the guaranty Plaintiffs provided in connection with their motion to amend is undated and Plaintiffs provide no information about when Mr. Pressman executed it.  The guaranty states that Mr. Pressman entered it "[a]s an inducement to APR to enter into the attached agreement," but the court has no idea what agreement Mr. Pressman is referring to.

## III.  ANALYSIS

The Federal Arbitration Act ("FAA"), which the parties agree applies in this case, declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA embodies a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), a policy that incorporates state law regarding "validity, revocability, and enforceability of contracts generally."  *Perry v. Thomas*, 482 U.S. 483, 472 n.9 (1987); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). Although, the FAA does not supersede generally applicable state contract law, it does "create a body of federal substantive law of arbitrability," which requires the court to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.

The court's first task is to determine whether the disputes before it are within the scope of the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  That is a cumbersome task here for two reasons.  First,

ORDER – 5

the parties have revealed the terms of only one of the three arbitration clauses that apply in this case, the clause in the Supply Agreement.  Second, whereas APR and Trident used their complaint to describe a series of three written agreements that governed APR's relationship with Puretek from 2009 to 2013, APR used its opposition to the motion to compel arbitration to assert, for the first time, that "[a]ll written agreements between APR and Puretek have been terminated since 2011 and the parties have been operating under an oral month-to-month arrangement."  Pltfs.' Opp'n (Dkt. # 16) at 5.  APR supports that statement with a declaration from its CEO, who declares that all of the parties' written agreements "concluded in 2011," and that any later commerce between the parties was "pursuant to oral, month-to-month" arrangements.  Lane Decl. (Dkt. # 17) ¶ 17.  If APR's disagreement with the allegations of its own complaint were material to the court's disposition of the arbitration issue, the court would order APR to file an amended complaint in which it decided which of its versions of events was accurate.  The court concludes, however, that APR's disagreement with itself makes no difference in the court's assessment of arbitrability.

The court can be certain that the parties agreed in the 2009 Supply Agreement that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement" is arbitrable; and that language is more than broad enough to encompass this dispute.  When parties "intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement."  *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (describing clause covering any claim "arising out of or relating to the validity, construction, enforceability or performance of this Agreement" as "broad and far reaching"); *Britton v. Co-Op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993) (observing that phrase "arising out of or relating to this Agreement or the breach thereof" is "routinely used in many securities and labor agreements to secure the broadest possible arbitration coverage").  Even if the court assumes that the parties' subsequent

ORDER – 6

written agreements contained narrower arbitration clauses, or even if the court assumes (in line with APR's second version of events) that there were no subsequent written agreements, all of the parties' current disputes either arise out of or relate to the Supply Agreement. The Supply Agreement had a 20-year initial term; Puretek disputes whether APR validly terminated it. Thus, according to Puretek, the Supply Agreement is still in force, and all of the parties' disagreements are either directly governed by that Agreement's terms or related to the Agreement. The parties unmistakably agreed to arbitrate, at a minimum, questions related to the Supply Agreement's termination, and APR seeks answers to those questions in the form of a declaratory judgment. Even if APR validly terminated the Supply Agreement, the written or oral contracts that followed either arise out or relate to the Supply Agreement. But for Puretek's alleged default in the Supply Agreement, the subsequent agreements would never have existed. *See PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193-94 (9th Cir. 2004) (affirming arbitrability of dispute involving oral agreements stemming from a written agreement with an arbitration clause).

APR's requests for declaratory judgment all arise out of or relate to the Supply Agreement. The court cannot declare which of the parties' contracts are still in force, what their continuing obligations are, who owns intellectual property referenced in the Supply Agreement, or what should become of the inventory in Puretek's possession without reference to the Supply Agreement. In order to decide if APR is correct that later agreements have superseded the Supply Agreement, the court must determine if the Supply Agreement is still in force.

Puretek's counterclaims, however inartfully pleaded, also arise out of or relate to the supply agreement. Puretek alleges that APR violated the Supply Agreement by coercing it to enter other agreements that were inconsistent with its terms. Its counterclaims arise from breach of the Supply Agreement as well as tortious actions relating both to the Agreement and to the intellectual property referenced in that

ORDER – 7

1    Agreement.  Its raises no new allegations to support its Consumer Protection Act claim, it

2    merely asserts that APR's conduct related to or arising out of the Supply Agreement is a

3    violation of that statute.

4          The court does not suggest that an agreement to arbitrate in one contract

5    irrevocably binds the parties to arbitration in all subsequent contracts between them.

6    Parties are free to agree later not to arbitrate their disputes; but there is no evidence that

7    the parties reached such an agreement in this case.  The strong federal policy in favor of

8    arbitration dictates the court's conclusion that the parties' business arrangements

9    following the alleged termination of the Supply Agreement are nonetheless within the

10   scope of the Supply Agreement's broad arbitration clause.

11         Plaintiffs offer other arguments to avoid arbitration, but they fare no better.  They

12   contend that Trident was never a party to any contracts with Puretek, and thus did not

13   agree to arbitrate.  If Trident was never a party to any contracts with Puretek, why is it a

14   plaintiff in this lawsuit?  The court is not at all convinced that Trident has any place in

15   this dispute.  If Trident does have a place in this dispute, it is because (as it admits) it

16   "acquired all of APR's rights in contracts and business relationships," Amended Compl.

17   ¶ 4.  Trident does not explain how it can acquire all of APR's contractual rights while

18   avoiding APR's contractual duty to arbitrate.  Washington courts, like federal courts,

19   have recognized that both equitable estoppel and "normal contract and agency principles"

20   permit signatories to arbitration agreements to compel arbitration against nonsignatories

21   in some circumstances.  *McClure v. Davis Wright Tremaine*, 890 P.2d 466, 467 (Wash.

22   Ct. App. 1995); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013)

23   (applying California agency law).  Washington courts recognize that parent companies

24   can be bound to the arbitration agreements of their subsidiaries.  *Townsend v. Quadrant*

25   *Corp.*, 224 P.3d 818, 829 (Wash. Ct. App. 2009) ("When the charges against a parent and

26   subsidiary are based on the same facts . . . and are inherently inseparable, a court may

27   order arbitration of claims against the parent even though the parent is not a party to the

28   ORDER – 8

arbitration agreement."), *aff'd by* 268 P.3d 917 (Wash. 2012).  Here, Trident is not a proper party to this dispute, or it is a proper party solely by virtue of its parent-subsidiary relationship with APR, or it is the successor to APR's contractual obligation to arbitrate. Assuming it has a place in this lawsuit at all, it cannot escape the arbitration clause.

APR also cannot escape arbitration by amending its complaint to assert claims against Mr. Pressman.  Those claims are based entirely on Mr. Pressman's guaranty of Puretek's debts, and those debts arise out of the Supply Agreement for the reasons the court has already stated.  Although the parties decline to reveal what written agreement Mr. Pressman's guaranty was appended to, they agree that all of the written agreements they entered had arbitration clauses.  Mr. Pressman may well have intended that disputes arising from his guaranty would be arbitrable.  The court cannot decide that question on the record before it.  Even if Mr. Pressman could not bind APR to arbitrate its claims against him, the court could not ignore that those claims depend entirely on the outcome of the arbitrable claims over Puretek's debt.  Thus, even if APR were not obligated to arbitrate those claims, the court would stay their consideration until the arbitration had concluded.

This dispute is arbitrable in its entirety, and there is therefore no reason for the court to consider APR's motion to dismiss Puretek's counterclaims.  Whether those claims are properly pleaded, they arise out of or relate to the Supply Agreement.  They are thus arbitrable.  Puretek must now state those claims in arbitration, where federal pleadings standards are presumably inapplicable.  An arbitrator, not this court, must decide whether Puretek has adequately articulated its claims against APR.

There is also no reason for the court to permit APR to amend its complaint to add Mr. Pressman as a Defendant.  APR can decide whether it wishes to name Mr. Pressman as a defendant in arbitration.  Mr. Pressman is apparently willing to consent to that arbitration, even if he might have the option to refuse.  Even if the arbitration does not formally decide any dispute between APR and Mr. Pressman, the court expects that the

ORDER – 9

arbitration (which will determine Puretek's debts to APR) will essentially dispose of APR's claims based on Mr. Pressman's guaranty.  If not, APR is free to raise those claims in a later lawsuit, or to renew its motion to amend in this court after arbitration.  The court finds no reason to permit APR to add him as a Defendant now.

Because this dispute is arbitrable in its entirety, the court must stay this action pending the outcome of the arbitration.  9 U.S.C. § 3.  Plaintiffs are responsible for updating the court on the status of the arbitration.

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Puretek's motion to compel arbitration (Dkt. # 11) and STAYS this action pending arbitration.  The court DENIES Plaintiffs' motion to amend.  Dkt. # 14.  Because this dispute will be resolved in arbitration, the court need not decide Plaintiffs' motion to dismiss Puretek's counterclaims, and the clerk shall TERMINATE that motion.  Dkt. # 16.

Plaintiffs must update the court on the status of the arbitration on June 15 and on the 15th day of every second month thereafter, and must notify the court promptly of any resolution of the arbitration.

DATED this 16th day of May, 2014.

_Richard A. Jones_

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10